FILED

OCT 2 0 2006

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

*******************************************************************************

| | | |
|---|---|---|
| ERNEST DOE, a minor, by and through | * | CIV. 05-3043 |
| DENITA DOE, his mother and next friend, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| TODD COUNTY SCHOOL DISTRICT, | * | |
| RICHARD BORDEAUX, | * | |
| RANDY HER MANY HORSES, | * | |
| MARLON LENEAUGH, | * | |
| CHARLES MOE, | * | |
| STEVE HER MANY HORSES, and | * | |
| TROY HEINERT, | * | |
| | * | |
| Defendants. | * | |
| | * | |

*******************************************************************************

Plaintiff Ernest Doe ("Ernest" or "plaintiff"), by and through his mother, Denita Doe ("Denita")[1], filed this action pursuant to 42 U.S.C. § 1983[2] alleging that the Todd County School District("TCSD"), Superintendent Richard Bordeaux ("Bordeaux"), Randy Her Many Horses ("Randy"), Marlon Leneaugh ("Leneaugh"), Charles Moe ("Moe"), Steve Her Many Horses ("Steve"), and Troy Heinert (collectively "defendants") deprived plaintiff of his constitutionally protected right to a public education, acting without due process of law to deprive plaintiff of his right to equal protection under the law. Defendants filed a motion to dismiss (Doc. 10) and a motion for partial summary judgment (Doc. 41). Defendants claim that plaintiff has failed to exhaust his administrative remedies under state and federal special education laws. Defendants'

---

[1] "Doe" is a pseudonym.

[2] 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

motion for summary judgment seeks dismissal of the action as to the defendants who are sued in their individual capacities.  Defendants argue that they are shielded by qualified immunity. Plaintiff has filed a motion for partial summary judgment as to liability (Doc. 48).  Plaintiff also filed an amended complaint (Doc. 46).  Defendants have filed a motion to strike the amended complaint (Doc. 53) and have filed a contingent motion to dismiss the amended complaint (Doc. 56).  All motions are addressed in this order.

## FACTUAL BACKGROUND

Ernest was a 14 year old eighth grade student at Todd County Middle School in Mission, South Dakota.  On October 20, 2005, Ernest admitted that he was one of four students who had driven past the Todd County Middle School some time after midnight on October 14, 2005, and that he fired a .22 caliber rifle in the vicinity of the  the school building from inside a moving vehicle.  No persons were in the school building or on the school grounds at the time.  As a consequence of Ernest's admission, Peggy Diekoff ("Diekoff"), principal of Todd County Middle School, suspended Ernest from all classes and activities of the school.  Diekoff sent a letter to Ernest's parents, William ("William") and Denita, stating that the reason for the suspension was Ernest's possession and use of a weapon resulting in vandalism to school property.  The letter also stated that the suspension would continue until there was a school board hearing.

By a letter dated October 25, 2005, Bordeaux informed the Does that he was modifying the suspension to a long-term suspension.  The suspension, as modified, would extend until the end of the semester on January 13, 2006.  The letter referred the Does to enclosed information regarding student due process rights and informed the Does that they had the right to request or waive a hearing with the school board.  The letter tentatively set a hearing for November 1, 2005. Neither the letter from Diekoff nor the letter from Bordeaux made mention of SDCL 13-32-4 or the Gun Free Schools Act of 1994.

On November 1, 2005, Ernest and Denita appeared at a hearing before the Todd County School Board to contest Bordeaux's decision to suspend Ernest from classes and activities until January 13, 2006.  Frances Shabazz ("Shabazz"), managing attorney with Dakota Plains Legal Services, appeared on behalf of the Does.  Bordeaux, Randy, Steve, Leneaugh, Moe, and Heinert were all present at the hearing.  At the onset of the hearing, Randy made the following statement:

2

> Each side, the student with his or her representative and the school administration will have an opportunity to present their side of the case, including an opening statement. The school administration will go first. At any time questions may be asked by each side or the school board. Any witnesses for either side may only be present to testify, and must take an oath or affirmation administered by the hearing officer. You swear or affirm to tell the truth at this hearing. The school board will continue in executive session to deliberate their decision. The board will then come out of executive session and make their decision. Are there any questions to these procedures?

All of the individuals present were sworn at the beginning of the hearing. Shabazz made an opening statement. Shabazz stated to the school board that, while Ernest admitted to firing the rifle from a vehicle on Highway 83, Ernest did not intend to hit the building and did not know whether any of the bullets he fired struck the building. Diekhoff then described the circumstances of the incident and told the school board that Ernest had admitted that he participated in the October 15, 2005 incident. There was no allegation or evidence that Ernest or any of the others physically set foot on the school grounds while they were in possession of the firearm.

Toward the end of the hearing, the focus shifted to a discussion of the fact that Ernest was on an Individualized Educational Program (IEP).[3] Because of Ernest's learning disability, he is entitled to the procedural protections and rights afforded to him by the Individuals with Disabilities Education Act (IDEA). A manifestation determination had not yet been completed at the time of the hearing. Consequently, Bordeaux advised that Ernest should be placed on disciplinary "home study" until such time as the manifestation determination could be completed. The school board did not take a vote or make any official findings, other than to continue Ernest on a home study basis pending the outcome of his manifestation determination.

---

[3] "The IEP is a comprehensive written statement developed jointly by the child's parents and the school district, which outlines the child's special educational needs and the specially designed instruction and services to be provided by the school system to meet those needs." M.P. ex rel . K. v. Independent School Dist. No. 721, 326 F.3d 975, 977 f n. 1 (8th Cir. 2003) (citing 20 U.S.C. § 1414(d)). Under the IDEA, a school district is required to provide an IEP for each disabled child. 20 U.S.C. § 1414(d)(2)(A).

On November 2, 2005, a meeting was held to determine whether Ernest's misconduct was a manifestation of his educational disability. The participants in this meeting included the district's exceptional education director, teachers, and Denita. By November 7, 2005, the testing and manifestation determination was completed. It was determined that Ernest's behavior was not a manifestation of his disability.

In a letter dated November 22, 2005, Bordeaux informed the Does that he was "leaving Earnest on home study until the end of the school year. This also means he is not to be on school grounds or at school activities." With this letter, Bordeaux effectively unilaterally extended plaintiff's suspension to May 17, 2006.

At the onset of this case, plaintiff filed a motion for preliminary injunction (Doc. 5) in an attempt to place Ernest back into the classroom at the Todd County Middle School for the second half of the school year. A hearing was held on January 20, 2006, and, through discussions the Court had with counsel for the parties, it was determined that the defendants would consent to allow Ernest to resume participation in classes and activities at the Todd County Middle School. The motion for preliminary injunction was granted and defendants were ordered to desist from continuing the suspension of the Ernest from classes and activities at the Todd County Middle School (Doc. 26). Ernest returned to school on January 23, 2006, after being suspended from November 2, 2005, to January 20, 2006.

## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AMENDED COMPLAINT

On March 23, 2006, plaintiff filed an amended complaint (Doc. 46). Defendants have filed a motion to strike the amended complaint (Doc. 53). Defendants did not file an answer to the original complaint. Defendants have not filed an answer to the amended complaint. Rather, since the defendants' motion to strike the amended complaint would not stay the time for answering, the defendants have filed a contingent motion to dismiss (Doc. 56), relying on the same grounds as their earlier motion to dismiss (Doc. 10).

In the ordinary course of things, plaintiff has the right to serve and file an amended complaint without leave of court. Leave of court must be obtained only if a "responsive pleading" to the complaint has been filed. *See* Fed. R. Civ. P. 15(a). The filing of a motion to dismiss or a motion for summary judgment does not constitute a "responsive pleading" on behalf

4

of the defendants. "[I]f the time for serving the responsive pleading is extended by a Rule 12(b) motion . . . the period for amending as of right also is enlarged." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1480 (3d ed. 2004).

Defendants contend that plaintiff has filed a "supplemental pleading," which is covered by Fed. R. Civ. P. 15(d), which requires leave of the Court. The distinction between a supplemental pleading and an amended pleading lies in the matters covered by the amendment. "[S]upplemental pleadings, not amended pleadings, are intended to cover matters occurring after the original complaint is filed." U.S. ex rel. Kinney v. Stoltz, 327 F.3d 671, fn.4 (8th Cir. 2003) (citing *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) ("An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause")).

Defendants point to paragraphs 40, 41, and 42 of the amended complaint, claiming that the allegations contained in those paragraphs "all relate to matters occurring after the commencement of this action." These paragraphs merely reference the actions taken by this Court in granting plaintiff a temporary injunction which enjoined defendants from continuing to exclude Doe from classes and activities at the middle school. No new relief is sought based on events occurring after December 29, 2005. Referring to events that took place after the date of the original complaint does not make an amended complaint a supplemental pleading. Defendants' motion to strike the amended complaint should be denied.

**DEFENDANTS' MOTION TO DISMISS**

Defendants have filed a motion to dismiss (Doc. 10) and a contingent motion to dismiss (Doc. 56). For the purposes of a motion to dismiss, the Court takes all facts alleged in the complaint or amended complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendants argue that, since plaintiff's claims come within the ambit of the IDEA, plaintiff is required to exhaust administrative remedies provided under the IDEA. 20 U.S.C. § 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.§ 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter (emphasis added).

While the plaintiff's allegations may well support claims that the defendant's conduct violated the 20 U.S.C. § 1415(k) procedural safeguards and the other provisions of the IDEA, a plaintiff can seek redress via § 1983 for violation of independently existing constitutional rights, even if the same set of facts also gives rise to a cause of action for violation of statutory rights. Crawford v. Davis, 109 F.3d 1281, 1284 (8th Cir. 1997). In addition, a plaintiff bringing this type of section 1983 claim, in federal district court, generally need not exhaust his administrative remedies. Plough v. West Des Moines Community Sch. Dist., 70 F.3d 512, 515 fn.5 (8th Cir. 1995) (citing *Patsy v. Board of Regents*, 457 U.S. 496, 498, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982)). The plaintiff's amended complaint seeks redress only for the deprivation without due process of law of the plaintiff's constitutionally protected right to a public education and for the deprivation of his right to equal protection under the law. He does not seek relief for his statutory rights under the IDEA. Accordingly, since the gravamen of the plaintiff's complaint seeks redress for the deprivation of the plaintiff's constitutional rights, and not for any of depravation of his statutory rights under the IDEA, the defendants' motion to dismiss should be denied.

## MOTIONS FOR SUMMARY JUDGMENT

Defendants have filed a partial motion for summary judgment (Doc. 41). Defendants are contending that they are entitled to a judgment as a matter of law based on the affirmative defense of qualified immunity. The defendants' motion seeks only to relieve the defendants of liability in their individual and not their official capacities. Qualified immunity does not apply to

6

the School Board or to the members of the Board as sued in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985).  The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity may possess.  In short, if the Court grants the defendants' motion, then the individual defendants would be relieved of their personal liability.  The only remaining liability questions left to determine would be that of the School Board itself.

Additionally, the plaintiff has filed a partial motion for summary judgment as to liability (Doc 48).  The Federal Rules of Civil Procedure provide, "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."  Fed.R.Civ.P. 56(c).  Thus, the plaintiff's motion determines only the issue of the defendants' liability and not damages.

The summary judgment standard is well known and has been set forth by this court in numerous opinions.  See Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998).  Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).  The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury

to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corporation v. Catrett, 477 U.S. at 325, 106 S.Ct. at 2554. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553. In considering the motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

1. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736-37, 73 L.Ed.2d 396 (1982) (citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). The affirmative defense of qualified immunity may provide officials with two types of protection. First, it operates as a defense to liability when the actions allegedly taken by officials did not violate "clearly established" law. Harlow, 457 U.S. at 818. If the law was not clearly established when officials acted, qualified immunity bars an award of damages, but it does not preclude the granting of injunctive relief. Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996). Second, qualified immunity may provide officials with an "immunity from suit" by relieving them from the burdens both of discovery and a trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

8

a.   RAISING AFFIRMATIVE DEFENSES BY MOTION

As a preliminary matter, the plaintiff objects to the defendants' motion as premature. The claim is that the defendants have not filed a responsive pleading and qualified immunity is an affirmative defense. Affirmative defenses not asserted in the pleadings are generally waived. Fed.R.Civ.P. 8(c). The objective of this rule is to provide the opposing party with notice of the affirmative defense and a chance to rebut. Fed.R.Civ.P. 8(c). The defendants acknowledge qualified immunity is an affirmative defense but maintain the defense can be raised by motion prior to a responsive pleading.

Although affirmative defenses under Rule 8(c) at one time were raised only by responsive pleading, as the plaintiff contends, it is now common to allow an affirmative defense to be asserted by a motion under Rule 12(b)(6) when the validity of that defense is apparent from the face of the challenged pleading. 5B C. Wright & A. Miller, Federal Practice and Procedure § 1349 (3d ed. 2004). The Eighth Circuit Court of Appeals has "held that 'qualified immunity is an affirmative defense,' 'which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.' " Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), in turn quoting Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)). In addition, the possibilities of converting a Rule 12(b)(6) motion for dismissal into a Rule 56 motion for summary judgment or moving for summary judgment prior to serving a responsive pleading have the effect of allowing the early assertion of defenses other than those specifically enumerated in Rule 12(b). Federal Practice and Procedure § 1349. "It is fairly well settled that an affirmative defense may be asserted by a motion under Rule 56 made prior to the answer even though the facts supporting the defense do not appear on the face of the complaint." 10B Charles Alan Wright et al., Federal Practice and Procedure § 2734 (3d ed. 2004). A summary judgment motion filed solely on the basis of pleadings is treated as the functional equivalent of a dismissal motion. North Arkansas Medical Center v. Barrett, 962 F.2d 780, 784 (8th Cir. 1992) (citing Blum v. Morgan Guar. Trust Co., 709 F.2d 1463, 1466 (11th Cir. 1983)). Finally, when a defendant brings a motion for summary judgment, some district courts also consider evidence beyond the pleadings as bearing on a defendant's challenge to a claim for relief that falls within the scope of the Rule 8(c) affirmative

defenses.  Federal Practice and Procedure § 1277.  Therefore, the defendants' summary judgment motion is properly before the court.

b.   **COMPLIANCE WITH SUMMARY JUDGMENT MOTION REQUIREMENTS**

Also as a preliminary matter, both parties claim the other has failed to comply with the requirements of Fed.R.Civ.P. 56 or D.S.D. LR. 56.1.  The plaintiff complains the defendants' statement of material facts did not comply with Fed.R.Civ.P. 56 and D.S.D. LR. 56.1(b).  D.S.D. LR. 56.1(b)  provides:

> upon any motion for summary judgment . . . there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Each material fact in this Local Rule's required statement shall be presented in a separate, numbered statement and with an appropriate citation to the record in the case.

Further, the plaintiff claims the manner in which the defendants submitted their statement of facts prejudices the plaintiff, because it essentially permits the defendants to assert the plaintiff's facts for this motion while still permitting them to contest those facts at a later time.  The defendants' statement of undisputed facts (Doc. 43) contained two numbered paragraphs.  The first paragraph stated, the "material facts from the plaintiff's complaint will, for the purposes of this Motion for Partial Summary Judgment, be treated as undisputed."  The second paragraph provided a list of attachments, which consisted of an affidavit by Bordeaux and a number of exhibits.

Conversely, the defendants argue that the plaintiff's response to their summary judgment failed to comply with Fed.R.Civ.P. 56(e) and D.S.D. LR. 56.1(c), because the plaintiff did not respond to the substance of the defendants' motion or include in his response a statement of material facts.  Fed.R.Civ.P. 56(e) provides, *inter alia*:

> when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

D.S.D. LR. 56.1(c) provides, *inter alia*:

10

> the papers opposing a motion for summary judgment shall include a separate,
> short, and concise statement of the material facts as to which it is contended that
> there exists a genuine issue to be tried. The opposition shall respond to each
> numbered paragraph in the moving party's statement with a separately numbered
> response and appropriate citations to the record.

The defendants' statement of material facts did not include a concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried, as required by D.S.D. LR. 56.1(b). The failure to comply with a local rule requiring that a motion for summary judgment be accompanied by a concise statement of material facts which the movant contends are not genuinely in dispute is a sufficient basis on which to deny a motion for summary judgment. Servin v. Gatx Logistics, Inc., 187 F.R.D. 561, 563 (N.D.Ill. 1999); Griffin v. Bank of America, 971 F.Supp. 492, 495 (D.Kan. 1997). "The concision and specificity required by Local Rule 56.1 seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank, 354 F.3d 721, 725 (8th Cir. 2003). "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994) .

The defendants' failure to provide a conforming statement of material facts is a violation of D.S.D. LR. 56.1(b). The usual sanction for noncompliance with this rule results in the facts being deemed admitted for the purpose of the motion. The deemed admission, however, is not fatal since the standard of review for summary judgment requires the Court to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). Furthermore, "where the Court reviews the entire record, the failure to strictly abide by the requirements of Local Rule of Practice 56.1(B) is of little consequence." Hansen v. Actuarial and Employee Ben. Services Co., 395 F.Supp.2d 881, 884 fn.2 (D.S.D. 2005). Under either the sanction or the summary judgment standard the result is the same, the plaintiff's facts are deemed admitted for the

purposes of the motion.  Thus, the material facts from the plaintiff's complaint will, for the purposes of this motion for partial summary judgment, be treated as undisputed.

The plaintiff's papers opposing the defendants' motion for summary judgment did not include a statement of the material facts as required by D.S.D. LR. 56.1(c).  D.S.D. LR. 56.1(d) provides:

> all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

The practical effect of the plaintiff's failure to submit a statement of material facts under D.S.D. LR. 56.1(d) is that the defendants' statement of material facts is deemed admitted.  For the sake of this motion, the defendants' statement of facts is the plaintiff's complaint.  This is the same set of facts the Court is compelled employ by the summary judgment standard.  Therefore, the facts stated in the plaintiff's complaint are deemed admitted for the purposes of this motion.  Having said all this, the Court takes a dim view of failing to follow local rules.

Finally, the plaintiff's memorandum of law did not address the substance of the defendants' motion. The last sentence of Fed.R.Civ.P. 56(e) directs the Court to enter summary judgment against an adverse party who did not so respond, only if appropriate.  Also, "even when defendant's motion for summary judgment is not opposed by plaintiff, the district court must satisfy itself that, on the record before it, there are no genuine issues of material fact as to at least one of necessary elements of plaintiff's case."  Noland v. Commerce Mortg. Corp., 122 F.3d 551, 553 (8th Cir. 1997).  Accordingly, the Court will consider the merits of the defendants' motion.

### C.   DEFENDANTS' QUALIFIED IMMUNITY CLAIM

The Court must make a three-part inquiry to determine whether defendants are entitled to summary judgment on the basis of qualified immunity.  This inquiry is: (1) whether a federal violation was asserted; (2) whether the allegedly violated right was clearly established; and (3) whether, given the facts most favorable to the plaintiff, a reasonable official would have known that the alleged actions violated that right. Foulks v. Cole County, Mo., 991 F.2d 454, 456 (8th Cir. 1993); Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509 (8th Cir. 1995).

The first required element of a qualified immunity defense is a plaintiff's assertion of a federal violation. The violation asserted, in this case, is the deprivation without due process of law of the plaintiff's constitutionally protected right to a public education and the deprivation of the plaintiff's right to equal protection under the law. More specifically, was there a denial of constitutionally adequate notice and a fair hearing. Defendants' do not dispute that the plaintiff's complaint alleges a federal violation; however, they assert that the plaintiff does not identify the necessary facts to establish any violations with regard to actions taken by the defendants in their individual capacities. Further, they maintain their actions were consistent with the law and afforded the plaintiff the requisite level of procedural due process. While the parties disagree as to whether a violation occurred, they do not disagree that the plaintiff alleges a federal violation. Therefore, the plaintiff satisfies the threshold requirement of asserting a federal violation.

The second required element of a qualified immunity defense is whether the right allegedly violated was clearly established. "Clearly established" means the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; specific conduct need not have been previously held unlawful, so long as the unlawfulness is "apparent" in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In determining whether a particular right was clearly established at the time an official acted, "courts typically consider (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Bradway v. Gonzales, 26 F.3d 313, 318, 29 Fed. R. Serv. 3d 997 (2nd Cir. 1994), citing *Jermosen v. Smith*, 945 F.2d 547, 550 (2nd Cir. 1991).

A student's property interest in the right to a public education, which cannot be taken away for misconduct without affording the minimum procedures required by the due process clause, is clearly established. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures. Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 541 (1985). An essential principle of due process is that a

deprivation of life, liberty, or property must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 313 (1950). The laws of the State of South Dakota establish a right to a public education. The United States Supreme Court has characterized such a right as a property interest. *See* Goss v. Lopez, 419 U.S. 565, 575 (1975) ("Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."). Before there can be a significant deprivation of any property right, including the right to a public education, certain minimum due process procedures must be met.

The state and federal law mandates are sufficiently clear, in connection with the right to public education, as to what procedures are necessary to satisfy the procedural due process requirements in connection with long-term suspensions. *See* SDCL 13-32-4 (2006); SDCL 13-32-4.2 (2006); S.D. Admin. R 24:07:03:01 (2006); Waln By and Through Waln v. Todd County School Dist., 388 F.Supp.2d 944 (D.S.D. 2005). Due process is required in schools all over South Dakota. Waln, 388 F.Supp.2d at 1001. The clarity of the existing law should have adequately apprised the defendants as to what was required to satisfy due process. Further, the alleged conduct took just over month after the Court released the Waln opinion. The Waln case involved a high school student who was suspended for 31 days and who brought a successful §1983 action against the defendant school board and Superintendent Bordeaux, alleging they failed to adhere to state statutes and administrative rules governing student due process. The defendants' alleged conduct, in this case, is some of the very same conduct the Court held violated Waln's due process rights just a month earlier. In short, the right to a public education is sufficiently clear that the defendants would have been aware what conduct was lawful and what was not.

The final required element of a qualified immunity defense is whether a reasonable official would have known that the alleged actions violated that right. Ordinarily, a qualified immunity defense will fail if the law was clearly established at the time the action occurred, since reasonably competent public officials should know the law governing their conduct. E-Z Mart

14

Stores, Inc. v. Kirksey, 885 F.2d 476, 478 (8th Cir. 1989) (citing *Harlow*, 457 U.S. at 818-19, 102 S.Ct. at 2738. Additionally, a school board member, who has voluntarily undertaken the task of supervising school operations and student activities, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his or her charges. Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). Nevertheless, if the official asserting the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. E-Z Mart Stores, 885 F.2d at 478.

The defendants do not claim that they were not aware of the law or that there were extraordinary circumstances. Instead, they claim their actions were consistent with the law and they afforded the plaintiff the requisite level of procedural due process. Further, they argue that, even if they violated state statutory or administrative provisions, they are still entitled to qualified immunity, since officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some state statutory or administrative provision. Davis v. Scherer, 468 U.S. 183, 194, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984); Bartlett v. Fisher, 972 F.2d 911, 915 (8th Cir. 1992). The Bartlett court tells us that the defendants' alleged violations of state regulations are irrelevant to the qualified immunity question before us, except insofar as a violation might reflect a deprivation of procedural due process, as defined by federal law. 972 F.2d at 915.

The defendants' actions were inconsistent with law and did not afford the plaintiff the requisite level of procedural due process. As previously mentioned, school board members are held to know the constitutional rights of their students and the law that governs their conduct. Yet, the defendants failed to comply with the law or heed the lessons from their previous experiences. The defendants repeated some of the very same conduct in this case that the Court held was impermissible just a month earlier in the Waln case. *See* 388 F.Supp.2d 944.

The defendants' conduct was objectively unreasonable. First, the defendants maintained the rationale for the original short-term suspension and for the subsequent modification of this suspension to a long-term suspension was for the possession and the use of a weapon resulting in vandalism to the school property. The school handbook provides that an act of vandalism is

15

punishable by a suspension of one to three days for the first offense. On October 20, 2005, the school's principal suspended the plaintiff pending a school board hearing. On October 25, 2005, Bordeaux changed the plaintiff's suspension into a long-term suspension and suspended the plaintiff until January 13, 2006. The principal and Superintendent Bordeaux justified their actions based upon vandalism to the school property, even though the handbook only provided for three days suspension for a first act of vandalism.

After Bordeaux's imposition of a long-term suspension, the defendants began to assert another justification for the plaintiff's long-term suspension. This alternative justification, the Gun Free Schools Act of 1994 was discussed by the defendants during the school board hearing. However, the plaintiff contends this justification was not raised until after the lawsuit was filed.

The Gun Free Schools Act of 1994 was codified at 20 U.S.C. § 8921 and was repealed by Public Law 107-110, Title X, § 1011(5)(C) on January 8, 2002. The Gun Free Schools Act of 1994, required states to enact statutes mandating expulsion for students who possess a firearm on school premises or at school activities. The Gun Free Schools Act, reenacted under the so-called No Child Left Behind Act of 2001, provides in 20 U.S.C. § 7151(b)(1) that,

> [e]ach State receiving Federal funds under any subchapter of this chapter shall have in effect a State law requiring local educational agencies to expel from school for a period of not less than 1 year a student who is determined to have brought a firearm to a school, or to have possessed a firearm at a school, under the jurisdiction of local educational agencies in that State, except that such State law shall allow the chief administering officer of a local educational agency to modify such expulsion requirement for a student on a case-by-case basis if such modification is in writing.

This Act was implemented by the State of South Dakota in SDCL 13-32-4, which provides *inter alia*:

> The board may suspend or expel from school any student for violation of rules or policies or for insubordination or misconduct, and the superintendent or principal in charge of the school may temporarily suspend any student in accordance with § 13-32-4.2. The rules or policies may include prohibiting . . . the use or possession of a firearm, as provided in § 13-32-7, on or in any elementary or secondary school premises, vehicle, or building or any premises, vehicle, or building used or leased for elementary or secondary school functions or activities . . . The period of expulsion may extend beyond the semester in which the violation, insubordination, or misconduct occurred . . . If a student has

16

intentionally brought a firearm onto school premises, the expulsion may not be for less than twelve months.  However, the superintendent or chief administering officer of each local school district or system may increase or decrease the length of a firearm-related expulsion on a case-by-case basis . . .

The student handbook provides that, if there is a violation of the Gun Free School Act of 1994, an expulsion of no less than 12 months shall occur.

Assuming *arguendo* that, the defendants relied upon the Gun Free Schools Act of 1994 as the predicate for the plaintiff's long-term suspension, they did not act within its terms.  First, the Gun Free Schools Act was directed toward the States and not individuals.  By the time the defendants acted, the law had been repealed.  Also, the plaintiff's alleged conduct does not come within the scope of the Gun Free Schools Act, as it is implemented in South Dakota.  The plaintiff did not use or possess a firearm on school premises, as required by the plain language of the state law.  The plaintiff fired on the school from a public highway.  Moreover, the plaintiff's punishment was inconsistent with state law and the school handbook.  State law and the school handbook each provide for a suspension of not less than 12 months for a violation.  The plaintiff, in this case, was suspended for less than 12 months, from October 20, 2005 till January 13, 2006, and then again till the end of the 2005-2006 school year.  The state law permits the superintendent to modify the length of the suspension on a case by case basis.  But, the record does not indicate that Bordeaux modified the suspension pursuant to the state law provision.  Further, if the defendants were acting pursuant to the Gun Free Schools Act, they should have apprised the plaintiff of it prior to the hearing so that the plaintiff could adequately defend himself.  In short, given either justification for their action, the defendants' conduct did not conform to state law or their own rules.

Second, there is no evidence that the superintendent filed "a sealed, written report with the school board by the end of the fifth school day following the first day of the long-term suspension . . ." *See* AR 24:07:03:01.  Since the plaintiff's long-term suspension began on Tuesday, October 25, 2005, the sealed, written report should have been filed by the end of the school day on Monday, October 31, 2005.  If there was a report, there is no evidence that it was sent to the plaintiff's parents.  *See* AR 24:07:03:01.

17

Third, the board of education made no decision at all and referred the decision back to Bordeaux, pending the manifestation determination. The defendants did not stay the plaintiff's long-term suspension, pending the manifest determination. Essentially, the defendants determined the plaintiff's conduct was not a product of his disability prior to the manifest determination even being completed. This is backwards.

Fourth, Bordeaux, on November 22, 2005, extended the long-term suspension until the end of the year, without any notice or hearing. Any extension of a suspension is a separate and distinct suspension requiring a separate hearing. Waln By and Through Waln v. Todd County School Dist., 388 F.Supp.2d 944, 1007 (D.S.D. 2005) (citing Montoya v. Sanger Unified School Dist., 502 F. Supp. 209, 213 (E.D. Cal. 1980).

While the list above is not an exhaustive recitation of the defendants' conduct, the Court reaches the determination, based on this conduct and based on the record, that the defendants did not conduct themselves as reasonably competent public officials. Additionally, based on the foregoing, the defendants cannot successfully maintain that their actions were consistent with the law and that they afforded the plaintiff the requisite level of procedural due process.

Next, the defendants argue that, even if they violated state statutory or administrative provisions, they are still entitled to qualified immunity, since officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some state statutory or administrative provision. However, "a state or governmental body violates due process of law when it fails to follow the procedural steps it has adopted for proceedings held before it." Waln, 388 F.Supp.2d at 1001. Even if the plaintiff is not protected by the South Dakota statutes, in Goss, the Supreme Court noted that "[n]either the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." Goss, 419 U.S. at 576. As previously mentioned, the defendants did not follow the mandated procedures or any other proper procedures.

Finally, the defendants argue that they are entitled to an early determination of their individual liability exposure. Further, they argue that, until this threshold determination is resolved, discovery should not be allowed. The Court agrees that the defendants are entitled to

18

an early determination of their liability exposure. The Supreme Court stated the purpose behind creating an objective standard of reasonableness to evaluate qualified immunity was to resolve insubstantial claims prior to discovery. Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982). The defendants are correct that discovery is not to occur if the plaintiff has not alleged a violation of clearly established law. Harlow, 457 U.S. at 818. If, however, the plaintiff has alleged a violation of clearly established law, and the defendant alleges actions that a reasonable officer could have thought were lawful, then courts must grant discovery tailored to the immunity question. Anderson v. Creighton, 483 U.S. 635, 646 fn.6 (1987). While the defendants maintain that a reasonable officer could have thought their actions are lawful, the discussion above makes clear this could not be the case. Accordingly, the defendants' motion for summary judgment should be denied.

2.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff makes four principal legal arguments in his motion for partial summary judgment. First, the school's disciplinary rule requiring expulsion for a violation of the Gun Free Schools Act of 1994, without any definition of that Act, fails to give students fair warning of prohibited conduct and is void for vagueness. Second, the defendants' failure to provide the plaintiff with a statement specifying the disciplinary rules allegedly violated or the superintendent's written report deprived him of notice that was reasonably calculated to give him the information needed to defend himself in a hearing. Third, the school board's failure to make a decision on the merits of appeal and the effective remand of the plaintiff's appeal to Superintendent Bordeaux deprived the plaintiff of his right to a fair and meaningful due process hearing. Finally, Bordeaux's unilateral decision to expel the plaintiff until the end of the school year, without a notice or an opportunity for a hearing, deprived him of his right to education without due process of law. The Court will address each of these arguments in turn.

First, the plaintiff alleges that the defendants' disciplinary rule failed to give the plaintiff fair warning of prohibited conduct and is void for vagueness. The void for vagueness doctrine is incorporated into the notice requirement of the due process clause. D.C. and M.S. v. City of St. Louis, Mo., 795 F.2d 652, 653 (8th Cir. 1986). The doctrine requires that a statute or regulation define the offense with sufficient definiteness that ordinary people can understand what conduct

19

is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *See* Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Stephenson v. Davenport Community School Dist., 110 F.3d 1303, 1308 (8th Cir. 1997).

When conducting an "as applied" analysis, the Court must determine whether the school handbook provision was sufficiently precise to notify the plaintiff that his act constituted unacceptable conduct that could lead to expulsion. Woodis v. Westark Community College, 160 F.3d 435, 439 (8th Cir. 1998). The plaintiff cannot maintain a vagueness claim if the Court determines that he engaged in conduct clearly proscribed by the school handbook. Id.

The void for vagueness analysis is dependent on which rationale the defendants utilized for the suspension. The handbook's prohibition against vandalism on its face seems to be stated in sufficiently definite terms and the penalty seems to be adequately circumscribed as to avoid arbitrary and discriminatory enforcement. A violation of this rule only permits the imposition of a short-term suspension for the first offense. A long-term suspension based upon this disciplinary rule would be arbitrary. While the defendants' actions were arbitrary, they were not arbitrary as a result of the way the rule was drafted. Hence, the disciplinary rule prohibiting school vandalism is not void for vagueness.

The handbook's disciplinary rule requiring expulsion for a violation of the Gun Free Schools Act of 1994 is not stated in definite terms where so as to provide students fair warning of prohibited conduct. The handbook does not include any language describing the Gun Free Schools Act of 1994. A middle school student reading this rule would have no idea what is prohibited based on the text provided in the handbook. Additionally, the Gun Free Schools Act of 1994 was repealed and applies only to the States. Accordingly, the disciplinary rule requiring expulsion for a violation of the Gun Free Schools Act of 1994 is void for vagueness.

Second, the plaintiff alleges that the defendants failed to provide the plaintiff with a statement specifying the disciplinary rules allegedly violated or to provide the superintendent's written report, thereby depriving him of the information needed to defend himself in a hearing. While notice and a hearing are required before a student can be excluded from school, these procedures need not be as exacting as those found in the criminal or juvenile system. *See* Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) ("Given

the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."); Esteban v. Central Missouri State College, 415 F.2d 1077, 1090 (8th Cir. 1969) (holding school regulations are not to be measured by the standards which prevail for the criminal law and for criminal procedure). Procedural due process must be afforded by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures. Esteban, 415 F.2d at 1090 (8th Cir. 1969). School officials must provide the student with notice both of the specific charge, that is, the specific rule allegedly violated, and of the specific alleged conduct that is said to violate the rule. Riggan v. Midland Indep. Sch. Dist., 86 F.Supp.2d 647, 658 (W.D.Tex. 2000). Therefore, the notice need only be sufficiently specific to advise the student and his counsel of the activities or incidents which have given rise to the proceeding and which will form the basis for the hearing. Butler v. Oak Creek-Franklin School Dist., 172 F.Supp.2d 1102, 1112 (E.D.Wis. 2001). In short, the test is that of reasonableness. Esteban, 415 F.2d at 1090 (8th Cir. 1969).

The defendants claim their notification procedures were reasonable. The initial letter suspending the plaintiff and the letter modifying the suspension each contained a statement of the charge and a notice of the right to request a hearing. Each letter stated the reason for the suspension was the possession and use of a weapon resulting in vandalism to school property. Additionally, the letter modifying the suspension included a statement indicating the length of the suspension sought and a packet of materials outlining the student's due process rights. Neither letter made mention of SDCL 13-32-4 or the Gun Free Schools Act of 1994. Additionally, neither letter included any factual information about the charge or a report by the Superintendent.

The Court finds that the defendants' procedures were not reasonable. First, the penalty sought was inconsistent with the charge advanced by the defendants. A vandalism charge imposes a penalty of only a one to three day suspension. Further, the defendants never communicated to the plaintiff, at least prior to the hearing, that they were going to advance the Gun Free Schools Act charge. Second, there is no evidence that the defendants provided the plaintiff with the Superintendent's report as required by South Dakota Administrative Rules. *See*

AR 24:07:03:01. Without the report or the factual information the defendants were relying upon, the plaintiff could not adequately prepare for the hearing. Although this is not the totality of the defendants' failure to provide the plaintiff due process, it is clearly enough to find a violation. Thus, the defendants did not afford the plaintiff the requisite degree of due process.

Third, the plaintiff alleges that the school board's failure to make a decision on the merits of the appeal deprived the plaintiff of his right to a fair and meaningful due process hearing. The Court previously held that a school district fails to provide meaningful due process hearing where the school board makes no decision at all and refers the decision back to the superintendent. Waln, 388 F.Supp.2d at 1007. A decision on the merits of the appeal must, at a minimum, be reduced to writing, include findings of fact, and be approved by the school board. The school board did not take a vote or make any official findings, other than to continue the plaintiff on a home study basis pending the outcome of his manifestation determination.

The defendants claim the findings of fact were not necessary because the plaintiff admitted firing the rifle at the school building. Where there is an admission, it is generally recognized that no claim may be made on the basis of a denial of procedural due process. *See* Farrell v. Joel, 437 F.2d 160, 163 (2nd Cir. 1971); Keough v. Tate County Bd. of Educ., 748 F.2d 1077, 1083 (5th Cir. 1984); Betts v. Bd. of Educ. of the City of Chicago, 466 F.2d 629, 633 (7th Cir.1972); Black Coalition v. Portland Sch. Dist. No. 1, 484 F.2d 1040, 1045 (9th Cir. 1973); Watson v. Beckel, 242 F.3d 1237, 1242 (10th Cir. 2001); S.K. v. Anoka-Hennepin Independent School Dist. No. 11, 399 F.Supp.2d 963, 968 (D.Minn. 2005). However, the plaintiff must have unequivocally admitted to the misconduct for it to qualify as an admission. Betts, 466 F.2d at 633.

In the appeal hearing, the plaintiff's attorney stated that, while Ernest admitted to firing the rifle from a vehicle on Highway 83, Ernest did not intend to hit the building and did not know whether any of the bullets he fired struck the building. While the plaintiff admits to firing a weapon, it is not an unequivocal admission of liability. The plaintiff did not admit responsibility for the building damage. In addition, if the plaintiff was not contesting liability, an appeal would not have been necessary. Assuming *arguendo* that the statement qualifies as an unequivocal admission, it is only an admission to a charge of vandalism. The school's disciplinary rules

22

provide that an act of vandalism is punishable by a suspension of one to three days for the first offense. Thus, the plaintiff was ineligible for a long-term suspension and an appeal was unnecessary. Further, there was no allegation or evidence that Ernest or any of the others physically set foot on the school grounds while they were in possession of the firearm. Thus, the school's disciplinary rule requiring expulsion for a violation of the Gun Free Schools Act of 1994 was not applicable. Under any of these circumstances, the plaintiff was legally entitled to a school board determination on the merits of his appeal. Therefore, the School Board's failure to make a decision on the merits of appeal deprived the plaintiff of his right to a fair and meaningful due process hearing.

Finally, Bordeaux's unilateral decision on November 22, 2005, to expel the plaintiff until the end of the school year, without a notice or an opportunity for a hearing, deprived, without due process of law, the plaintiff of his right to education. Extension of a suspension from school is a separate and distinct suspension requiring a separate hearing. Waln, 388 F.Supp.2d at 1004. Bordeaux's extension of the plaintiff's suspension constituted a separate and distinct suspension requiring a separate hearing. The plaintiff was not afforded an opportunity for a hearing. Therefore, the plaintiff was deprived of his right to education without due process of law.

In summary, I find no genuine issues of material fact exist as to liability to permit the Court to deny plaintiff's motion for partial summary judgment. As stated, I find the plaintiff was deprived of his right to education without due process of law. Accordingly, the plaintiff's partial motion for summary judgment should be granted.

23

## ORDER

Now, therefore, based on the foregoing,

IT IS ORDERED:

    (1)  The defendants' motion to strike the amended complaint, Doc. 53, is denied.

    (2)  The defendants' motion to dismiss, Doc. 10, is denied.

    (3)  The defendants' contingent motion to dismiss, Doc. 56, is denied.

    (4)  The defendants' motion for partial summary judgment, Doc. 41, is denied.

    (5)  The plaintiffs' motion for partial summary judgment as to liability, Doc. 48, is granted.

Dated this 26 day of October, 2006.

BY THE COURT:

CHARLES B. KORNMANN

United States District Judge

ATTEST:

JOSEPH HAAS, CLERK

BY: _____

                          DEPUTY

    (SEAL)

24